The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PARLER LLC, | |
| Plaintiff, | No. 2:21-cv-00031-BJR |
| v. | DEFENDANT AMAZON WEB SERVICES, INC.'S OPPOSITION TO PARLER LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER |
| AMAZON WEB SERVICES, INC., | |
| Defendant. | |

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031-BJR) - 1
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

This case is not about suppressing speech or stifling viewpoints. It is not about a conspiracy to restrain trade. Instead, this case is about Parler's demonstrated unwillingness and inability to remove from the servers of Amazon Web Services ("AWS") content that threatens the public safety, such as by inciting and planning the rape, torture, and assassination of named public officials and private citizens. There is no legal basis in AWS's customer agreements or otherwise to compel AWS to host content of this nature. AWS notified Parler repeatedly that its content violated the parties' agreement, requested removal, and reviewed Parler's plan to address the problem, only to determine that Parler was both unwilling and unable to do so. AWS suspended Parler's account as a last resort to prevent further access to such content, including plans for violence to disrupt the impending Presidential transition.

Despite Parler's rhetoric, its lawsuit is no more than a meritless claim for breach of contract. But the facts are unequivocal: If there is any breach, it is Parler's demonstrated failure and inability to identify and remove such content. AWS was well within its rights to suspend Parler immediately for those failures. Parler also cannot hold AWS liable in tort for enforcing the agreement's express terms. And there is no antitrust claim where, as here, Parler cannot plausibly plead an agreement to cause it harm and the complained-of conduct is undeniably compatible with a legitimate purpose.

Compelling AWS to host content that plans, encourages, and incites violence would be unprecedented. Parler has no likelihood of prevailing on the merits, and the balance of equities and public interest strongly tip against an injunction. The motion for a temporary restraining order should be denied.

## II. FACTUAL BACKGROUND

**A.     Parler Conducts the "Absolute Minimum" of Content Moderation.[1]**

Parler operates a social media service that has gained favor as an alternative to Facebook and Twitter. Doran Decl. Ex. A. Parler prides itself on its hands-off approach to moderating

---

[1] Declaration of Ambika Doran Ex. B.

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 1
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

user content.  Parler's homepage tells users to "[s]peak freely and express yourself openly, without fear of being 'deplatformed' for your views." *Id.*  In interviews, Parler's CEO has stated he "do[es]n't think it's [Parler's] obligation to" monitor the full range of it users' content, Doran Decl. Ex. O, and promoted the service's laissez-faire philosophy on content moderation.  *See id.* Ex. D ("If you can say it on the street of New York, you can say it on Parler"); *id.* Ex. E at 4:48 ("[W]hat we've decided to do is, let's just not do any curation, no fact checking, let people do that on their own ...."); *id.* at 5:42 (attributing Parler's projected growth to not moderating content as other social media services do); *id.* Ex. C at 2:02 (stating "we really don't want to get into the business of kind of determining what is and is not allowed to be discussed").

### B. Parler Enters an Agreement with AWS for Web Hosting Services.

On June 12, 2018, Parler signed up with AWS, which provides hosting and cloud computing services for businesses, nonprofits, and government organizations globally. Declaration of Amazon Executive 2 ¶ 3.  Parler accepted the terms of the AWS Customer Agreement.  *Id.* Ex. A.  The Agreement requires that Parler "ensure that Your Content and your and End Users' use of Your Content or the Service Offerings will not violate any of the Policies or any applicable law," and makes clear that Parler is "solely responsible for the development, content, operation, maintenance, and use of" the material on its service.  *Id.* § 4.2; *see also id.* § 4.5 ("You will ensure that all End Users comply with your obligations under this Agreement ....").  The Agreement also requires Parler to "immediately suspend access" to content that it learns violates its obligations under the Agreement.  *Id.* § 4.5.

Parler further agreed to comply with AWS's Acceptable Use Policy ("AUP").  *Id.* § 14; *see also* Executive 2 Decl. ¶ 3 & Ex. C.  The AUP, in turn, makes clear Parler's agreement not to use AWS to host certain content, including content that "violate[s] the rights of others, or that may be harmful to others."  *Id.*

The Agreement further makes clear that AWS may suspend or terminate an account "immediately" upon notice if AWS determines that an end user's use of the services "poses a

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 2
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

security risk to the Service Offerings or any third party," or otherwise breaches the Agreement. *Id.* Ex. A § 6.1(a)-(b) (suspension); *id.* § 7.2(b) (termination).

### C. Parler Repeatedly Violates the Agreement.

In mid-November 2020, AWS received reports that Parler was hosting content threatening violence, in breach of the agreement. Executive 2 Decl. ¶ 4. On November 17, 2020, seeking to better understand Parler's approach to content moderation, AWS provided Parler two representative examples, asked whether "this type of content … violate[s] [Parler's] policies," and asked for "more detailed information on [Parler's] policies and processes for handling and mitigating" such content. *Id*. & Ex. D. Two days later, Parler responded that it had referred one of the examples to its "regular contact for investigation." *Id.* Ex. D.

Over the next seven weeks, AWS reported more than 100 additional representative pieces of content advocating violence to Parler's Chief Policy Officer, including:

- "Fry'em up. The whole fkn crew. #pelosi #aoc #thesquad #soros #gates #chuckschumer #hrc #obama #adamschiff #blm #antifa we are coming for you and you will know it."
- "#JackDorsey … you will die a bloody death alongside Mark Suckerturd [Zuckerberg].… It has been decided and plans are being put in place. Remember the photographs inside your home while you slept? Yes, that close. You will die a sudden death!"
- "We are going to fight in a civil War on Jan.20th, Form MILITIAS now and acquire targets."
- "On January 20th we need to start systematicly [sic] assassinating [sic] #liberal leaders, liberal activists, #blm leaders and supporters, members of the #nba #nfl #mlb #nhl #mainstreammedia anchors and correspondents and #antifa. I already have a news worthy event planned."
- "Shoot the police that protect these shitbag senators right in the head then make the senator grovel a bit before capping they ass."

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 3
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

- "After the firing squads are done with the politicians the teachers are next."
- "Death to @zuckerberg @realjeffbezos @jackdorsey @pichai."
- "White people need to ignite their racial identity and rain down suffering and death like a hurricane upon zionists."
- "Put a target on these motherless trash [Antifa] they aren't human taking one out would be like stepping on a roach no different."
- "We need to act like our forefathers did Kill [Black and Jewish people] all Leave no victims or survivors."
- "We are coming with our list we know where you live we know who you are and we are coming for you and it starts on the 6th civil war… Lol if you will think it's a joke… Enjoy your last few days you have."
- "This bitch [Stacey Abrams] will be good target practice for our beginners."
- "This cu** [United States Secretary of Transportation Elaine Chao] should be… hung for betraying their country."
- "Hang this mofo [Georgia Secretary of State Brad Raffensperger] today."
- "HANG THAt N***** ASAP"

Executive 2 Decl. ¶ 5 & Ex. E at 1-3, 6-7, 13, 17, 28, 32, 49, 53-54; *see also generally id.* Ex. F (more examples).

**D.    AWS Exercises Its Right to Suspend Parler's Account.**

On January 6, 2021, rioters supporting President Trump's efforts to overturn President-Elect Biden's victory stormed the U.S. Capitol.  Doran Decl. Exs. F-H.  Five people died, including a police officer. *Id.* Ex. I.  The FBI and other law-enforcement agencies have since opened at least 25 domestic terrorism cases relating to these incidents.  *Id.*

Content encouraging violence continued to grow rapidly after the events of January 6, and on January 8, 9, and 10, 2021, AWS reported additional examples of that content.  Executive 2 Decl. ¶ 6.  On January 8 and 9, AWS also spoke with Parler executives about its content moderation policies, processes, and tools, and emphasized that Parler's current approach failed to

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 4
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

address Parler's duty to promptly identify and remove content that threatened or encouraged violence. *Id.* In response, Parler outlined additional, reactive steps that would rely almost exclusively on "volunteers." *Id.* AWS continued to see problematic content hosted on Parler. *Id.* ¶ 7. During one of the calls, Parler's CEO reported that Parler had a backlog of 26,000 reports of content that violated its community standards and remained on its service. *Id.*

On January 9, 2021, Apple and Google terminated Parler's accounts. Doran Decl. Ex. N. The same day, AWS notified Parler it would suspend its account effective 11:59 p.m. January 10. Executive 2 Decl. ¶ 7 & Dkt. 1-1.[2] AWS explained it "remain[s] troubled by the repeated violations of our terms of service," noting it had "reported 98 examples to Parler of posts that clearly encourage and incite violence." *Id.* Dkt. 1-1. AWS also reported the "steady increase in this violent content," making "clear that Parler does not have an effective process to comply with the AWS terms of service." *Id.* The email also notes Parler "remove[s] some violent content when contacted by us or others, but not always with urgency," and Parler's proposed moderation plans "will not work in light of the rapidly growing number of violent posts." *Id.* The letter confirms that AWS will "ensure that all of your data is preserved for you to migrate to your own servers, and will work with you as best we can to help your migration." *Id.*

That evening, Parler's CEO posted that "[w]e should be operational within less then [sic] 12 hours of downtime after Amazon abruptly pulls our access." Doran Decl. Ex. K. He also posted that Parler had "prepared for events like this by never relying on amazons [sic] proprietary infrastructure and building bare metal products." *Id.* Ex. J.

Parler filed its complaint and motion for temporary restraining order January 11. Dkts. 1, 2. Despite speculation in the Complaint, *see, e.g.*, Compl. (Dkt. 1) ¶ 4, Parler alleges no facts that could possibly support its claims for breach of contract, tortious interference with prospective economic advantage, or violations of the Sherman Act. *Id.* ¶ 5.

---

[2] Parler accuses Amazon of leaking this letter to the press before sending it to Parler. Compl. ¶ 21. But this is based on an erroneous assumption that that the time stamp on the email showing Parler received the letter reflects *Pacific* Time, rather than *Central* Time. In fact, Amazon sent the letter to Parler before the press obtained the letter.

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 5
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### III.  ARGUMENT

A temporary restraining order is "an extraordinary and drastic remedy."  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation & internal quotation marks omitted); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  The plaintiff must establish (1) "[it] is likely to succeed on the merits"; (2) "[it] is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  Failing that, even were there "serious questions going to the merits," and there are not, a preliminary injunction may issue only "if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).  Parler has not satisfied any of these elements.

### A.     Parler Cannot Show A Likelihood of Prevailing on the Merits.

#### 1.     AWS Did Not Breach the Agreement.

To establish a breach of contract, a plaintiff must identify the "specific term of the contract" the defendant allegedly breached.  *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 376 (2018); *see also Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1171 (W.D. Wash. 2014) (no contract claim where plaintiff failed to identify section of contract breached), *aff'd*, 691 F. App'x 406 (9th Cir. 2017); *see also* Executive 2 Decl. Ex. A §§ 13.4, 14 (Washington law "govern[s] th[e] Agreement").

Parler claims AWS breached the agreement by failing to provide thirty days' notice of termination (to be clear, AWS suspended and did not terminate the account).  But it was Parler who breached the agreement, by hosting content advocating violence and failing to timely take that content down.  The Agreement requires Parler to ensure that neither its content nor the content of Parler's users violates AWS's policies or the law.  Executive 2 Decl. Ex. A § 4.2.  The

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 6
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

policies include the AUP, which prohibits "illegal" or "harmful" use, including content that "may be harmful to others," *id.* § 14; *id*. Ex. C, and requires Parler to "immediately suspend access" if it becomes aware the content violates the agreement. Executive 2 Decl. Ex. A § 4.5. If Parler fails to comply with these duties, AWS may "immediately" suspend Parler's account. *See id*. § 6.1 (a)-(b).

The content AWS provided to Parler is merely representative of volumes of content that poses a security risk and harms others, in direct violation of the AUP. *See id*. Exs. E-F (examples). That content includes, but is not limited to, calls for violence against a wide range of individuals, including elected officials, law enforcement officers, and teachers. People have acted on these calls: Parler was used to incite, organize, and coordinate the January 6 attack on the U.S. Capitol. *See* Doran Decl. Exs. F-G. AWS reported to Parler, over many weeks, dozens of examples of content that encouraged violence, including calls to hang public officials, kill Black and Jewish people, and shoot police officers in the head. Executive 2 Decl. Exs. D-F. Parler systematically failed to "suspend access" to this content, much less to do so immediately, and demonstrated that it has no effective process in place to ensure future compliance.[3] Executive 2 Decl. ¶ 7. Parler itself has admitted it has a backlog of 26,000 reports of content that violates its (minimal) community standards that it had not yet reviewed. *Id*. Parler's own failures left AWS little choice but to suspend Parler's account.

Parler's Complaint is replete with insinuations that AWS had equal grounds to suspend Twitter's account and thus discriminated against Parler. For example, Parler cites the hashtag "#hangmikepence," which briefly trended on Twitter. Mot. ¶ 4. But AWS ***does not host*** Twitter's feed, so of course it could not have suspended access to Twitter's content. Executive 1 Decl. ¶¶ 5, 7. Twitter has since independently blocked that hashtag. Doran Decl. Ex. L.

---

[3] Parler claims it removed the content AWS flagged, Compl. ¶ 29, but Parler failed to do so in a timely manner, or required follow up, sometimes several times, Executive 2 Decl. ¶ 5.

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 7
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 2. AWS Did Not Tortiously Interfere with Parler's Business Expectancies.

Parler cannot plead around its contract claim by asserting a claim for tortious interference. An interference claim requires the plaintiff to establish (1) a valid contractual relationship or business expectancy; (2) the defendant had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) the defendant interfered for an improper purpose or used improper means; and (5) resultant damage. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351 (2006). Parler fails to allege several of these elements.

First and most important, Parler bases its interference claim on its allegation that Amazon "terminat[ed] Parler's Agreement." Compl. ¶ 51. However, where the defendant's alleged interference is the exercise of a contractual right, a plaintiff has "no reasonable expectancy" and cannot assert an interference claim. *Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wn. App. 1, 10 (1989). Because the Agreement permitted Amazon to suspend Parler, Parler cannot assert a tortious interference claim based on the suspension. *Hein v. Chrysler Corp.*, 45 Wn.2d 586, 595, 598 (1954) (where "true gist of the action" is contract breach, courts dismiss interference claims; damage "may be fully recovered by the injured party in his breach of contract action").

Further, Parler has not alleged any interference was for an improper purpose or done through improper means. "Improper purpose" requires that the interferor acted out of "greed, retaliation, or hostility," *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169 (2012), and "wrongful means" requires the alleged interference be "wrongful by some measure beyond the fact of the interference itself," *Pleas v. City of Seattle*, 112 Wn.2d 794, 804 (1989) (citation & internal quotation marks omitted). Parler speculates that AWS suspended Parler's account for improper reasons, but that speculation elides entirely the fact that (as AWS repeatedly warned it) Parler repeatedly violated the Agreement. *Supra* at III.A.1.

### 3. AWS Did Not Violate the Sherman Act.

Plaintiff's Complaint fails to plead the most basic elements of a Section 1 claim. "§1 requires: (1) a 'contract, combination or conspiracy among two or persons or distinct business

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 8
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

entities'; (2) which is intended to restrain or harm trade; (3) 'which actually injures competition'; and (4) harm to the plaintiff from the anticompetitive conduct." *NameSpace Inc. v. Internet Corp. for Assigned Names and Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015).

As the Supreme Court held in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007), a plaintiff claiming a Section 1 violation must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556-57; *Insulate SB Inc., v. Advanced Fishing Systems Inc. et al.,* 797 F. 3d 538, 544-46 (8th Cir. 2015) (applying same principles to vertical agreements). But Parler does not even claim Twitter and AWS communicated about Parler, much less formed an agreement. Nor could it, as a senior AWS executive testified AWS did not authorize and is not aware of such communications. Executive 1 Decl. ¶ 8. The Complaint alleges only that Amazon has agreed to provide cloud infrastructure to deliver Twitter feeds, *see* Compl. ¶¶ 15-16, and then asserts that "AWS is violating Section 1 of the Sherman Antitrust Act in combination with Defendant [sic] Twitter." *Id.* ¶ 5. As *Twombly* holds, this does not suffice to survive a motion to dismiss: "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. at 557.

Further, "[f]ollowing *Twombly*, courts dismiss Section 1 complaints when there is an independent business justification for the observed conduct and no basis for rejecting it as the explanation for the conduct." *In re McCormick & Co. Inc.*, 217 F. Supp. 3d 124, 132-34 (D.D.C. 2016) (granting motion to dismiss based on *Twombly*, citing other cases); *see also Souza v. Estate of Bishop*, 821 F.2d 1132, 1335 (9th Cir. 1987) (Where there is an "understandable and legitimate business reason" for each defendant's conduct, plaintiff fails to state a Section 1 claim). Here, not only does AWS have a legitimate business reason to suspend Parler's account, but that reason—keeping content that violates its agreement with customers off its servers—is the only plausible conclusion. To be clear, AWS has no incentive to stop doing business with paying customers that comply with its agreements. Parler failed to meet that obligation, and fails to state a claim for an antitrust violation, much less to show a likelihood of prevailing on the merits of its antitrust claim.

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 9
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Parler's antitrust allegations fail also because they do not even plead the basic requirements of a Sherman Act claim, such as how competition is harmed, *NYNEX Corp. v. Discon, Inc.,* 525 U.S. 128, 135 (1998), the relevant product and geographic markets, *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001), the share of those markets enjoyed by AWS, *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972-73 (9th Cir. 2008), and others. This is especially important where, as here, Parler freely admits that it has access to numerous potential web-hosting service providers—not claimed to be involved in or restrained by the alleged conspiracy—with whom Parler can freely contract. *See* Compl. ¶ 23. Those alternatives alone preclude Parler from stating a plausible claim for relief. *See Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162-64 (9th Cir. 1997).

### 4.   Section 230 Bars Interference and Antitrust Claims.

In addition to their facial deficiencies, Parler's interference and antitrust claims also fail under Section 230(c)(2) of the Communications Decency Act. Under that statute, the provider of an "interactive computer service" is immune for acting in good faith to restrict access to material that is excessively violent, harassing, or otherwise objectionable. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 1105 (9th Cir. 2009) (citing 47 U.S.C. § 230(c)(2)). That is precisely what AWS did here: removed access to content it considered "excessively violent" and "harassing[.]" 47 U.S.C. § 230(c)(2)(A); *see Zango, Inc. v. Kaspersky Lab, Inc.*, 2007 WL 5189857, at *4 (W.D. Wash. Aug. 28, 2007) (assessment of objectionable content is subjective to the provider), *aff'd*, 568 F.3d 1169 (9th Cir. 2009); *Holomaxx Techs. v. Yahoo!, Inc.*, 2011 WL 865794, at *5 (N.D. Cal. Mar. 11, 2011) (same).[4]

---

[4] Parler's antitrust and interference claims are also barred by § 230(c)(1). *See, e.g.*, *Riggs v. MySpace, Inc*., 444 F. App'x 986, 987 (9th Cir. 2011) (Section 230(c)(1) immunizes "decisions to delete [plaintiff's] user profiles"); *Fed. Agency of News LLC v. Facebook, Inc*., 432 F. Supp. 3d 1107, 1116-21 (N.D. Cal. 2020) (dismissing claims based on removal of plaintiff's account, postings, and content); *Mezey v. Twitter, Inc*., 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (dismissing plaintiff's claims that Twitter unlawfully suspended his account); *Dipp-Paz v. Facebook*, 2019 WL 3205842, at *3 (S.D.N.Y. July 12, 2019) (Section 230 bars claims arising from suspension of plaintiff's Facebook account).

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 10
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### B.     The Balance of Equities and Public Interest Disfavor an Injunction.

To obtain injunctive relief, a plaintiff also "must establish that 'the balance of equities tips in [its] favor.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). "The less certain … the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). Courts also must consider whether the relief would adversely affect the rights of nonparties or the public. *See Winter*, 555 U.S. at 26.

The hardships on AWS and the public from an injunction would far outweigh any speculative damage Parler claims it may suffer from a short interruption of its service.

First, compelling AWS to host Parler content would threaten the safety of individuals. This risk is not speculative. The violence at the U.S. Capitol was assisted by content posted by Parler users. *See, e.g.*, Doran Decl. Ex. F (sites including Parler used to provide "directions on which streets to take to avoid the police and which tools to bring to help pry open doors"). Forcing Amazon to host such content poses further risk, including at the inauguration next week. Such a requirement also poses a risk to Amazon itself, with posts calling for others to "burn down Amazon delivery trucks" until they "reverse course." Executive 2 Decl. Ex. F. By suspending Parler's account, AWS seeks to prevent illegal and violent acts from being coordinated using AWS's resources—a right the Agreement secures.

Second, any injunction would impair AWS's ability to take swift action against customers who misuse its services to promote violence. Requiring AWS to allow services like Parler to remain active through weeks or months of court proceedings would heighten the risk of violence and harm to the public.

Finally, Parler's allegations of harm contradict its own public statements. Parler's CEO has assured users that Parler "prepared for events like [the termination] by never relying on amazons [sic] proprietary infrastructure," that the site will be fully operational "with less then [sic] 12 hours of downtime" after termination, and that Parler has "many [companies] competing

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 11
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

for [its] [hosting] business." Doran Decl. Exs. J-K. Accordingly, the balance of the equities and public interest weigh strongly against the issuance of any injunction.

### C. Parler Has Failed to Show It Will Suffer Irreparable Harm Absent an Injunction.

A TRO is also not warranted because Parler has not shown irreparable harm is likely. *Alliance for the Wild Rockies,* 632 F.3d at 1131. Irreparable harm is "harm which cannot be redressed by a legal or an equitable remedy following trial." *Campbell Soup Co. v ConAgra, Inc.*, 977 F.2d 86, 91 (3rd Cir. 1992) (citation & internal quotation marks omitted). Monetary harm is not "irreparable" injury. *L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1202.

Parler has not identified irreparable harm. AWS has promised to preserve Parler's data and help Parler migrate its services elsewhere. Dkt. 1-1. Parler's CEO has acknowledged that the service never has relied on AWS exclusively. Doran Decl. Ex. J. He also told Parler users that the service may be operational within twelve hours of AWS's suspension of Parler's account. *Id.* Ex. K. A temporary service interruption is not irreparable harm, and any alleged harm would be compensable by damages.

## IV. CONCLUSION

Because Parler has not met the exceptionally high standard for a TRO, AWS respectfully asks the Court to deny Parler's motion.

DATED this 12TH day of January, 2021.

Davis Wright Tremaine LLP
Attorneys for Amazon Web Services, Inc.

By s/Ambika K. Doran
Ambika Kumar Doran, WSBA #38237
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: 206-622-3150
E-mail: ambikadoran@dwt.com

Alonzo Wickers IV, Cal. State Bar #169454
*pro hac vice* application forthcoming
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:  213-633-6800
E-mail: alonzowickers@dwt.com

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER (No. 2:21-cv-00031) - 12
4813-5403-5670v.5 0050033-000653

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax