The Honorable Barbara J. Rothstein

David J. Groesbeck
WSBA No. 24749
David J. Groesbeck, P.S.
1333 E. Johns Prairie Rd
Shelton, Washington 98584
Tel.: 509-747-2800
Fax: 509-747-2828
Email: david@groesbecklaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

## AT SEATTLE

| | |
|---|---|
| PARLER LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>AMAZON WEB SERVICES, INC.,<br><br>　　　　　Defendant | No. 2:21-cv-00031-BJR<br><br>**DECLARATION OF JOHN MATZE, JR. IN SUPPORT OF PARLER'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 1



**David J. Groesbeck, P.S.**
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

The undersigned declares as follows:

1. I am the Chief Executive Officer for Parler LLC ("Parler"). I am over the age of 18 years and have personal knowledge, and competence to testify if needed, of the matters set forth herein through firsthand knowledge and review of corporate documents kept in the ordinary course of business.

2. I am a co-founder of Parler and have served as its CEO since its founding in 2018. Consequently, I have personal knowledge of the company and its dealings with Amazon Web Services, Inc. ("AWS").

3. Like many social media platforms, Parler charges no subscription fees, but instead generates all of its income from advertisement revenue. Immediately before AWS shut down all online services, Parler had over 15 million accounts and approximately 1 million new downloads of its app per day. Because there was a widespread public expectation that President Trump would join the Parler platform after being expelled from Twitter, there was a very real possibility that Parler's estimated value might soon rise to several billions of dollars.

4. I am aware that there has been some discussion in the news media of metadata evidence supposedly proving that Parler users were at or in the Capital Building during the recent riot. However, the evidence presented by the media does not actually show this. Instead, it shows the location where videos were *taken* that

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 2

**David J. Groesbeck, P.S.**
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

were later uploaded to Parler. But it does not show that videos were taken by a Parler user. Thus, for example, if a person recorded a video at the Capitol and then shared it with someone who decided to upload it, a Parler account who was nowhere near the Capitol could then upload the video to Parler. But the underlying geocaching data of the video would still show the original location where it was recorded. Thus, the fact that a Parler account had uploaded a video taken at the Capitol in no way shows that the Parler user was present there, rather it was plausible they were reporting the news.

5. Further, to my knowledge not one person that the news media has reported as arrested for the Capital riot has a Parler account. Although Ashli Babbitt, the woman shot and killed by law enforcement when she forced her way into the Capitol Building, did have a Parler account, it had not been used since November. She also had a Twitter account that *was* in use the day of the riot, January 6, 2020. *See* Exhibit A (Babbitt Tweet).

6. Until January 8, 2021, AWS gave us no indication that it considered our content moderation policies and methods violative either of the AWS Acceptable Use Policy or the AWS Customer Agreement (the "Agreement"). To the contrary, at the time AWS chose to enter into the Agreement with Parler, we had already informed AWS that Parler's content moderation methods were reactive (moderating content, when necessary, after posting) rather than prospective (pre-

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 3



David J. Groesbeck, P.S.
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

screening content). Until more recently, Parler has generally relied on a jury system wherein Parler "jurors" would flag and vote whether to remove problematic content according to community standards of decency. The Parler "jury pool" received significant training about terms of service and violations, including that Parler had no tolerance for inciting violence or lawbreaking. AWS had long been informed of this system, such as in conversations with AWS representative ███ ███, and never expressed any concerns with it before January 8, 2021.

7. Even more recently, AWS's actions and communications led Parler's corporate officers to believe that, far from being concerned about remaining in a contractual relationship with Parler, AWS wished to expand that contractual relationship. In September 2020, Parler received an email from AWS offering to finance our company as part of an AWS program for startups. Then, in mid-December 2020, AWS representatives spoke with Parler representatives seeking to sell proprietary AWS services on which Parler might rely for the core functionality of our company. Again, they offered both propositions with full notice of our content moderation methods and infrastructure.

8. On November 10, 2020, I met with AWS representatives to explore the possibility of Parler's longterm engagement using AWS systems—so-called "vendor lock"—including a move to Amazon's proprietary database. This would require a great deal of investment and trust on Parler's behalf as we would have to

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 4

**David J. Groesbeck, P.S.**
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

specifically design portions of our software to only work with Amazon-specific products. At that time, AWS knew there was a possibility that President Trump might obtain a Parler account, likely bringing with him a surge of followers to the Parler platform. What is more, around that time Parler had informed AWS that initial tests using Artificial Intelligence ("AI") to pre-screen inappropriate content, including material that encouraged or incited violence, were returning promising results.

9. AWS was well aware that, between January 6 and 8, 2021, Parler was actively trying to address content moderation challenges exacerbated both by current events and by a corresponding and an unprecedented surge in Parler users and activity. As we communicated to AWS, the backlog of approximately 26,000 reports of potentially violative content that AWS references in their briefing accumulated during a 7-hour period from the afternoon to late evening of Friday, January 8, when, due to the infrastructural stresses resulting from that surge, Parler's software went intermittently down and accounts using Parler had loading times exceeding 10 seconds to submit or receive on their device, making the ability to functionally use Parler extremely time-consuming., I was texting and otherwise in communication with  about the problems Parler's software was facing given those unusual circumstances. At that time, neither she nor any other AWS representative indicated that AWS considered either our content moderation

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 5

David J. Groesbeck, P.S.
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

methods nor our responsiveness to flagged content issues to be a violation of the Agreement. Instead, she and other AWS representatives engaged with Parler's technical support and Chief Technical Officer, ▮▮▮▮, until January 8, 2021 at approximately 16:00 P.M., Pacific Time, at which time the AWS technical support team ceased helping Parler cope with these technological problems.

10. Because AWS had both longstanding knowledge of Parler's content moderation methods and immediate knowledge of our most recent efforts to cope with content moderation problems exacerbated by a dramatic surge in users and corresponding stress on Parler's technological infrastructure, Parler management was blindsided by AWS's abrupt notice, on January 9, 2021, that it considered Parler to be in violation of the Agreement.

11. Based on my interactions with AWS personnel during this period, I believe AWS's decision to terminate service to Parler was based, not on expressed concerns about Parler's compliance with the AWS Agreement, but in part on a desire to deny President Trump a platform on any large social-media service. AWS had inside and confidential knowledge from Parler about when and if he would join. The week of our ban most large tech companies barred Trump from having online access. ▮▮▮▮, who is a Joe Biden supporter, was AWS's representative assigned to me by AWS, and was aware since at least October 11, 2020, that Trump was considering moving to Parler under the pseudonym "Person

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 6

David J. Groesbeck, P.S.
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

X". She questioned me frequently via text message, phone calls and emails about any knowledge of those plans. It was only after Twitter announced its intention to terminate Trump from its platform that AWS expressed any concern about Parler's compliance with its agreement. And in fact, AWS's termination of Parler has had the effect of denying a large social-media platform to Trump, even while protecting a large customer—Twitter—from the increased competition that would have resulted if Trump had moved to Parler.

12. I had a call with multiple members of the AWS team on Sunday night, January 11, 2021, shortly before AWS shut Parler down. In that call, I informed AWS that Parler, looking ahead to the upcoming Presidential inauguration, was actively trying to prevent the recurrence of infrastructural stresses and resulting content moderation problems by working on additional enhanced features such as machine learning algorithms which, although not perfect and only running for an hour or so, were able to proactively detect many types of toxic behavior and expressions of violence and report them to a Parler jury for review before the public could see the content. Besides telling AWS that Parler would begin pre-screening content, I also raised the possibility that Parler might buy Amazon's own AI software. We were discussing expedited development of an integration with Amazon Rekognition, which could help quickly identify images and videos which contained material against Parler's and AWS's terms of service. I also notified AWS

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 7



**David J. Groesbeck, P.S.**
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

that Parler was working through the backlog of 26,000 reported violations and that we could reduce the violations very quickly using machine learning. (Since that discussion, and as of today, Parler has reduced that backlog to under 1,000.)

13. Despite this, during the call the AWS team was emphatic and explicit in voicing their determination to effect a final termination of their relationship with Parler, and not merely a temporary suspension. By shutting Parler down entirely, AWS has necessarily shut down all of Parler's more than 15 million accounts and, through advertising, its sole source of revenue. The company now has no income to meet its overhead or other financial obligations.

14. I recently learned that, when AWS shut down all its services to Parler at their predetermined hour, Route 53, a highly scalable domain name system (DNS) was nevertheless left open, which conveniently directed hackers to our backup datacenters and caused them to initiate a sizable DNS attacks. Sometime on Monday, January 11, after it was public knowledge that AWS would no longer support Parler's servers, AWS abruptly terminated the Route 53 link, and presumedly stopped the hackers. This essentially became a threat to all future datacenters that, if they were to host Parler, they would be attacked by unprecedented hacks.

15. Prior to AWS's shutdown, I believed, and publicly stated, that Parler would quickly be able to find another hosting service. Since then, however, AWS's

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 8



David J. Groesbeck, P.S.
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

highly publicized break from our contractual relationship, when coupled with the toxic notoriety of massive hacking attacks, has driven away nearly all existing and prospective business relationships, including other hosting services that Parler had hoped to use. In leaked communications, AWS has used language that has allowed the media to mischaracterize Parler in ways that have alienated Parler's partners and caused them to withdraw potential financing and infrastructural services:

- ScyllaDB, which provides very specialized enterprise support and specialized database software that Parler critically relies on for their core infrastructure, gave Parler their 30-day notice explaining that, "even if [AWS's and the media's accusations were] only partially true," they could not continue their enterprise agreement with us.

- Slack Technologies, which provided a chat messaging system for coordinating with the Parler Jury that enforces our terms of service, abruptly canceled their services to Parler citing a violation of their own terms of service based on AWS's decision to drop Parler. Losing Slack makes it extremely difficult to effectively enforce our terms of service with our almost 600 volunteer and paid Jury members.

- Stripe, which processes credit card payments for Parler in order to generate revenue, also alluded to AWS's highly publicized allegations

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 9



David J. Groesbeck, P.S.
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

of violence on Parler and has terminated their agreement. This renders it impossible for Parler to generate revenue and, even if Parler could find a replacement vendor, the software integration would take weeks.

- After hearing of AWS's allegations, Parler's press relations firm, Shirley McVicker, abruptly terminated its agreement to represent Parler.

- Flurry, which does anonymous analytics for Parler to understand app usage and statistics about Parler's iPhone and Android app use, terminated their relationship with Parler.

- American Express has flagged Parler as violating their compliance rules and now Parler cannot use them as a credit card processor.

16. This is a limited list of vendors that have dropped Parler since AWS terminated services to our company. Even Epik, which is currently holding a domain for Parler, will not be providing the web hosting services that are essential for Parler to function as a company. Given this fallout, AWS's continuing refusal to honor its agreement to provide Parler with hosting and other online services is causing massive damage to our company's reputation, business model, and commercial liability.

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 10



**David J. Groesbeck, P.S.**
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

17. Finally, AWS's refusal to provide services to Parler, when paired with the massive reputational damage Parler has sustained, has also hobbled Parler's ability to respond to the factual allegations on which AWS's briefing relies. AWS makes many claims tying Parler account users to the recent civil unrest, but we cannot even access our data to verify or disprove AWS's claims.

18. My company is now a social network without a network. By turning off Parler's online capabilities, AWS has crushed our business's growth and eviscerated its ability to function as a going concern. Until those online capabilities are restored, Parler faces the very real and immediate prospect of permanent destruction.

19. As a final matter, multiple members of Parler's team have come to me expressing both fear for their career and fear for their lives and potentially bodily harm due to the press surrounding AWS's claims. Many employees want to resign due to the strain and pressure they feel, fearing hostility towards our company and fearing for their own safety. Some have had articles written about them. Many are being harassed by reporters and journalists already. Some have had to cancel their phone numbers, and their family members' phone numbers, due to harassment. Some have gone so far as to leave their home state to escape. I have left my home to go somewhere safe. Via messages on LinkedIn, Twitter, and email, I have received many recent threats of violence. Though most have presented no

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 11

David J. Groesbeck, P.S.
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800

imminent threat of danger, I have seen one particular group with a history of committing murder doxing my home street on Twitter with threat accusations lobbed against me, as well as others circulating my personal passwords. AWS's false accusations have incited a virtual mob and presented a risk to my family, our employees, and their families.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 13, 2021 at  .

_____
John Matze, Jr.

MATZE DECL. ISO TRO MOTION
(No. 2:21-cv-00031-BJR) - 12

David J. Groesbeck, P.S.
Attorney and Counselor
1333 E. Johns Prairie Rd
Shelton, Washington 98584
(509) 747-2800